IN THE INTEREST OF D.T.
No. 27913.
Intermediate Court of Appeals of Hawaii.
March 21, 2007.
On the briefs:
Joseph Dubiel, for Father-Appellant.
Edward J.S.F. Smith, for Mother-Appellant.
Patrick A. Pascual and Mary Anne Magnier, Deputy Attorneys General, for Petitioner-Appellee.

SUMMARY DISPOSITION ORDER
BURNS, C.J., FOLEY and FUJISE, JJ.
The mother (Mother) and father (Father) of D.T., born on January 9, 1995, appeal from the family court's[1] March 28, 2006 Order Awarding Permanent Custody which terminated their parental and custodial duties and rights, appointed the State of Hawai`i Director of Human Services as permanent custodian of D.T., and ordered the December 1, 2005 Permanent Plan into effect. The goal of that permanent plan is the adoption of D.T. "by December 2006 or within six months of the award of permanent custody or whichever date is greater." We assume that "greater" means "later". Mother and Father also appeal from the April 20, 2006 Orders Concerning Child Protective Act that denied Mother's April 10, 2006 motion for reconsideration, and Father's April 13, 2006 motion for reconsideration.
On March 22, 2005, the Honolulu Police Department took physical custody of D.T. from Mother and the State of Hawai`i Department of Human Services (DHS) assumed temporary foster custody of D.T. On March 29, 2005, DHS placed D.T. with Mother's first husband where two of D.T.'s adult maternal half-siblings reside.
On March 30, 2005, in response to the March 28, 2005 petition for temporary foster custody filed by DHS, both Mother and Father stipulated to the award of foster custody of D.T. to DHS and to the March 28, 2005 service plan.
On April 12, 2005, Judge Marilyn Carlsmith appointed Dean T. Nagamine, Esq., as the guardian ad litem (GAL) to protect the interests of D.T.
On January 5, 2006, DHS filed a motion for permanent custody. After a trial on March 28, 2006, the court entered the Order Awarding Permanent Custody. The April 20, 2006 Orders Concerning Child Protective Act followed.
The Findings of Fact (FsOF) entered by the court on June 6, 2006, state in part:
13. On April 5, 2005, a "Motion for Admission to Hawaii Family Drug Court" ("Family Drug Court") was filed on behalf of Father.
14. Father was admitted into the Family Drug Court Program at the April 22, 2005 Family Drug Court hearing.
. . . .
37. Mother suffers from Methamphetamine/Amphetamine Dependence.
. . . .
56. . . . Specifically, Mother suffers from a Personality Disorder with Borderline, Dependent and Narcissistic traits. A personality disorder is dysfunctional in-grained personality characteristics that are difficult to treat. Treatment of personality disorders is long-term.
. . . .
64. It is not reasonably foreseeable that Mother will become willing and able to provide [D.T.] with a safe family home, even with the assistance of a service plan because even if Mother were to suddenly change her long standing pattern of behavior, there is no likelihood that she would sufficiently resolve her problems at any identifiable point in the future.
. . . .
67. Father is divorced from Mother. .
68. Father's untreated substance abuse is the primary safety issue that resulted in [D.T.] being subjected harmed [sic] and neglect and subject to threatened harm and neglect by Father. Father also has a history of domestic violence that he perpetrated on Mother.
. . . .
70. . . . Based on this psychological evaluation, Father suffers from Alcohol Abuse and Generalized Anxiety Disorder.
72. Father also has a history of having problems managing his anger, including violence directed at Mother, that resulted in extensive periods of incarceration. . . .
. . . .
78. Based on Father's . . . non-compliance, . . . Father was terminated from the Family Drug Court Program.
. . . .
80. Since being terminated from the Family Drug Court program, Father has not demonstrated the ability to address his substance abuse issues on a consistent basis.
81. Father is allowed to arrange visits with [D.T.] directly with [D.T.'s] foster parent. Although [D.T.] enjoys these visits, these visits are not indicative of Father's ability to provide [D.T.] with a safe family home on a consistent basis, in light of Father's outstanding substance abuse issue, and history of drug relapse.
. . . .
84. It is not reasonably foreseeable that Father will become willing and able to provide [D.T.] with a safe family home, even with the assistance of a service plan.
The Conclusions of Law (CsOL) were entered by the court on June 6, 2006. COL no. 10 states, "It is not reasonably foreseeable that [Mother or Father] will become willing and able to provide [D.T.] with a safe family home, even with the assistance of a service plan, within a reasonable period of time.
Mother challenges FOF no. 64. Father challenges FOF no. 84. He asks, "Why was [he] in Drug court, when he only drank beer?" Father then states, "There is no showing that [he] ever took illegal drugs."
Both Father and Mother challenge COL no. 10 and contend that the evidence is not clear and convincing, as required by HRS § 587-73(a)(2) (Supp. 2006), that it is not reasonably foreseeable that they will become willing and able to provide D.T. with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from March 30, 2005.
GAL Nagamine filed an answering brief in support of the family court's orders.
In accordance with Hawaii Rules of Appellate Procedure Rule 35, and after carefully reviewing the record and the briefs, and duly considering and applying the law relevant to the issues raised and arguments presented, we affirm (1) the March 28, 2006 Order Awarding Permanent Custody and (2) the April 20, 2006 Orders Concerning Child Protective Act that denied Mother's and Father's motions for reconsideration.
NOTES
[1] Judge William J. Nagle, III, presided.